Good afternoon, Your Honors. May it please the Court, Counsel. I'm Mark Fisher from the Appellate Defender's Office. I represent the defendant in this case, Alan O'Large. Mr. O'Large was convicted in a bench trial of unlawful delivery of a on August 13, 2012, he was accountable for a drug delivery made by a woman named Lachelle McDonald to undercover police officer Bradley Wachtel. Mr. O'Large was sentenced to a term of three years, eight months imprisonment. Now the single issue is raised in this direct appeal. The defendant argues he was not proved guilty beyond a reasonable doubt. He therefore asks Your Honors to reverse his conviction outright. The evidence of trial showed that about a month prior to this delivery, the same officer, Officer Wachtel, made an undercover buy from the same woman, Lachelle McDonald. On the day in question, arrangements were made for a second transaction. Pursuant to those arrangements, the officer picked up Ms. McDonald outside her residence in his vehicle and they drove to a shopping center where she said she would be meeting her supplier. While she sat in his car at the parking lot of the shopping center, she made a couple of calls on her cell phone. After the second call, she told the officer that her supplier was on the way. The officer then handed her $100. She got out of the car and headed towards an alley located behind the shopping center. At some point the agent lost sight of her. In the meantime, there were two surveillance officers parked in a vehicle near the shopping center. When they saw McDonald leave the agent's vehicle, they followed her towards this alley behind the shopping center and at some point they also lost sight of her. But ultimately they drove past the alley and each of those officers testified that as they did so, they saw McDonald standing in the alley near an unknown male. What is most important, however, is they did not see any transaction between those two individuals. They did not see anything pass from the unknown male to Ms. McDonald. In addition, neither one testified to seeing McDonald holding anything in her hands or secreting anything on her person. They then saw her leave the alley, return to the agent's car while the unknown male walked off in a different direction. McDonald arrived back at the officer's car and handed him a package containing a substance. It turned out to be cocaine. Now in the meantime, the surveillance officers wanted to find out who was this male in the alley. They didn't know who he was. They located nearby a patrol officer they knew. They gave him a description of the individual and asked if the patrol officer could find that individual and ascertain his identity. Patrol officer testified that he was able to do that and that the man was Alan O'Large. Finally, Ms. McDonald testified at trial. She admitted delivering the drugs to the agent. She said she was was serving a sentence for that offense. She testified that she received the drugs from her supplier, but the supplier was not Alan O'Large. Rather, it was a man she knew by the name of Country. Finally, she testified that she knew Alan O'Large. She'd known him for a long time and they had two children together. Now it was very clear, especially from the prosecutor's closing argument, that the prosecution's theory of the case was that the defendant was accountable for the deal because he gave the drugs to McDonald that McDonald then gave to the agent. The trial judge here specifically asked the prosecutor whether he had to believe that in order to find the defendant guilty and the prosecutor said yes. But in fact, the he said no one saw the male give anything to Ms. McDonald. He said in fact there was no specific evidence establishing whether or not the male even had drugs on his person at any time that day. And I should mention the judge the judge found that that male was Alan O'Large. But he said there was no evidence that that Mr. O'Large gave anything to McDonald. He also noted that the evidence did not refute the possibility that McDonald might have had the drugs on her person right from the beginning and that perhaps her saying she had to meet her supplier was merely a ruse or a canard. Nonetheless, although he rejected the state's theory of the case, the judge found Mr. O'Large guilty by accountability. But I would submit, Your Honors, that he had to speculate to do that. That's the problem with this case. He speculated that perhaps the defendant was there for moral support. Perhaps he was there as security. Perhaps he was there to make sure that the purchaser turned over the money to McDonald. According to the judge, he believed that the defendant was McDonald's quote agent for whatever purpose, close quote. And in its brief on appeal, I think the state very correctly summarized the judge's analysis here when the state writes at page 12 of its brief that the judge found the defendant guilty because he believed that the defendant participated in the drug deal in some way. But I would submit, Your Honors, that the judge was forced to speculate here because the evidence did not show that he participated in the drug deal in any way. And that is the reason the defendant submits, that he was not proved guilty beyond a reasonable doubt and why he asked this court to reverse his conviction. Now, the judge apparently placed some reliance on McDonald's testimony that she had known the defendant for a long time. However, she didn't testify that they still had an ongoing relationship at the time of the involved in any drug dealing business together or that he shared in the proceeds of this deal, nor was there any independent evidence that at the time of the incident that they were living together or involved in any drug business together. It's also important to note here that neither McDonald nor Olarge were arrested on the day of the incident. Charges weren't brought until a defendant, and he didn't appear in court until almost two years later in 2014. So although the patrol officer stopped a man who he said was Alan Olarge, and he stopped him solely to ascertain his identity, he did not arrest him, he did not search him. Furthermore, there was no evidence here of any further investigation of the defendant. And so no evidence about execution of a search warrant or ever finding drugs on the defendant's person or any place that he controlled, and no evidence that he either participated in or was even present in the vicinity of any transaction occurring after this point in time. And so really, the only evidence in this case is that McDonald met up in an alley, in the alley, with a man the judge found to be Olarge, and the defendant's not disputing that here on appeal, but that they were close to each other in the alley at some point before McDonald delivered drugs to the agent, but absolutely no evidence that the defendant played any role whatsoever. Well, the officers in the surveillance car who drove past the alley, they testified, again, they saw no transaction. Now, each of them did testify that when they drove by the alley, and it only took a few seconds for them to drive by, so it was pretty quick, but in any event, they both testified that each of them saw McDonald with one of her hands in the air, according to their testimony, and the man with one of his hands in the air. But they never saw the hands meet. They saw no transaction. In fact, at least one of the officers, and maybe both, but at least one of the officers said, you know, it's possible that what he saw was the hands meet. It could have even been a wave, for all we know. They never saw the hands meet, never saw anything pass between the two of them, and again, never saw McDonald holding anything in her hand or putting anything in her pocket, or otherwise secreting anything on her person. Now, is it somewhat suspicious? It's somewhat suspicious. Might that have given the police reason to further investigate Mr. Olarge, perhaps to follow him, to surveil him? Perhaps so, but that didn't happen here. All we have is what they briefly saw, and it's also important to note that this alley was not under surveillance the entire day. The surveillance officers knew the transaction was going to take place somewhere in the parking lot of the shopping center, but that's pretty much all that they knew. Again, based on this evidence, the judge had to speculate about different scenarios, and the reason he had to speculate is the evidence did not bear out specifically any one of those. Finally, the judge at sentencing, after he rejected the defendant's post-trial argument that he had not been proven guilty beyond a reasonable doubt, the judge came back to this idea of security. He said, well, I really think he was there from the Again, that's speculation, but beyond that, I would say that that is really inconsistent with the evidence here, because as your honors know, when drug deals go bad, they tend to go bad at or near the time of the delivery. So one would logically think if Mr. Olarge was there for security, that he would have remained in close proximity to McDonald up until the time of the delivery, or at least kept her in his eyesight so he could go to her aid if she ran into trouble. But the officers testified that Ms. McDonald went one direction from the alley, and the male went in the other direction. That seems inconsistent with this idea that he was there for security. What the evidence shows here, the defendant submits, is nothing more than the judge's gut feeling that the defendant had something to do with it, and that simply is not enough in proof beyond a reasonable doubt. So I would submit, your honors, if you were to affirm the conviction here, not only would that have a serious impact on Mr. Olarge, but it would have a serious and a dangerous impact on the law in Illinois. And I don't mean to be overdramatic, but I seriously submit, your honors, that if your honors uphold the conviction on this evidence, that would tend to signal the end of the reasonable doubt standard, at least here in the Third District. And for these reasons, Mr. Olarge respectfully asks your honors to reverse his conviction outright. I have a question. Your statement, I guess, doesn't talk about what happened before the controlled buy. Was it standard operating procedure where Ms. McDonald was searched? Well, no, and that's, I should clarify, and I'm glad your honor asked the question. Ms. McDonald was actually the target of this buy, as she was the target of the previous buy that had happened about a month previously. So this is very different from the circumstance where an individual, say, is arrested, and then to... But Ms. McDonald was the best lawyer to question that. Right, she was not searched, no. How do you know that she didn't have it in her pocket? And that is one of the things the judge mentions in announcing his findings. He says it's certainly possible that she had the drugs on her person right from the What would be the... Well, the judge doesn't speculate about that, but since your honor asks, allow me to speculate, if you like, and see if you agree. I can think of a couple of reasons. Number one, maybe she's thinking it's better for her for this transaction to take place in a public place, in the parking lot of a shopping center, as opposed to her home, because, of course, we know from reading these various cases and these various news stories that sometimes drug dealers are robbed. And so maybe she figures if she can, again, it would be less likely, perhaps, for a robbery to take place in this parking lot during daylight hours of a shopping center. Another possibility, I would speculate, is that if she makes the deal at her home or near her home, the dealer, or excuse me, the purchaser might believe that she is storing the drugs in her home, and therefore possibly to come back at another time to burgle the home, or perhaps the word might, if the word gets out that she's got drugs in her home, maybe the police find out, get a warrant to search the home, whereas if she tells her purchaser or purchasers, oh no, I only get the drugs from the supplier, that I would submit it's probably safer for her. And so I think those are possibilities. And out of those possibilities, then, do we have to speculate further, then, that Mr. O'Large just happened to be there when she was pulling this roof? Well, you know, it's a public place. It's daylight hours. It's not like midnight, 2 a.m., anything like that. It's behind a shopping center, a public place, and in fact, the surveillance officers testify they park in a tire store, I think, near the shopping center. So these businesses are there. They're open for business. Mr. O'Large, he lives in the community. Maybe he's there to go shopping. He, at one time, had a relationship with this woman, so maybe they stop and say hello. Again, is it possibly suspicious? As I say, it's possibly suspicious, and it would, I think, be the least reason to investigate this individual, surveil him, you know, see what he's up to in the days, in the weeks following this incident. But suspicion isn't proof beyond a reasonable doubt. That's the problem. Speculation, conjecture, the judge's gut feeling that the defendant must have had something to do with this, that is not enough to support a suspicions, perhaps, would justify them in further investigating the defendant, who presumably they didn't know about at the time of the incident because, again, the target here is Ms. McDonald. And, again, hopefully I've answered your Honor, Justice Wright's question. No, they did not search her because she was the target. She didn't know that Wachtel was an undercover officer, so that didn't happen. And that's very different from other cases we see where, of course, somebody searched, et cetera, et cetera. Your client isn't making an issue out of identification, however. He wasn't apprehended that night? That is right. He was not apprehended, was not arrested. Again, a patrol officer testified that at the request of these two surveillance officers. And he is not an issue? No, defendant is, now, it was a bit of an issue in the trial court. Again, the McDonald testified she met her supplier, but her supplier was another individual. But in this appeal, defendant is not making an argument about identity, is simply making an argument the evidence was woefully inadequate to connect Mr. O'Large to the delivery of drugs to the agent. Thank you. And unless there are further questions from the Honors, again, that is the reason why Mr. O'Large asked this Court to reverse his conviction. Thank you. Ms. Morton. Good afternoon. I seek support. Counsel, my name is Jasmine Morton. I represent the people of the state of Illinois in this matter. Here, in viewing the evidence in the light most favorable to the people, all elements of the offense of unlawful delivery of a controlled substance, being cocaine, found here. A judgment should only be overturned when evidence is so unreasonable or improbable as to raise reasonable doubt. Here, defendant was proven guilty, properly found guilty of this offense. And as counsel is now arguing on appeal, identity is not an issue. Defendant is conceding that he was in the alley. So when this controlled drug buy occurred, it's very similar to the previous drug buy with Ms. McDonald, where she dictates where the meeting space is. She dictates that my supplier will be bringing me the narcotics. In the previous buy, a car pulled up. There was some driver pulls off and now Ms. McDonald has crack cocaine in her hand that she is now giving to the undercover officer. Now in this second buy that's happening at the food mart, she again says that her supplier will be meeting her. She informs the officer that her supplier just left their house. They'll be coming on foot. She leaves the officer's car, walks behind the food mart, and she says that she makes contact with her supplier, uses an alias by the name of Country. There is no other individuals seen in the alley with her but Mr. Olarge. And Mr. Olarge happens to be the father of two of her children. So there's no other individuals seen in the alley with her. The officers in the surveillance unit see her, what looks like she's shaking hands with the defendant or that there's some sort of interaction going on because both of their arms are extended. And then they part ways. There's no testimony that she was in the alley for a prolonged period of time. Based on the people's reading of the record, it seems to be a pretty brief time between her leaving the undercover officer's vehicle and returning with drugs in hand to give to the officer. So it is a reasonable inference that the court made that the individual that she met in the alley that she says was her supplier, it's a reasonable inference to believe that that individual that she met in the alley, which opposing counsel is conceding, was at least one of the individuals that she met according to their theory, was Mr. Olarge, the defendant, that some sort of exchange occurred, that they were engaged in a drug deal together, that they are... That he is just as accountable for this deal as she is in whatever capacity he was there. It was the people's position, of course, that he in fact gave Ms. McDonald her drugs as she testified. That's who she received it from, her supplier. And as I said, no one else was in that alleyway. So the trial judge made some very, very reasonable inferences based on the circumstantial evidence that was presented. As I said, this is a very similar MO or structure for how Ms. McDonald does her drug deals. Reasonable inferences were made based on the evidence presented that both of them participated in the criminal act shown by his presence in that alley. There would be no other reason as to why he was in the alley, as opposing counsel speculates that maybe he was going shopping, but why through the alley? He's in the alley and then he's walking down Oakland Avenue and then he's identified by this marked police car as, yes, that's Alan O'Large. I know who that is. I ID him. I see that that's the individual. The surveillance unit says, yes, that's the individual that we saw in the alleyway. That part is not being contested. There was an interaction in that alleyway that was a part of the drug deal that Ms. McDonald was engaging in. And if there are no other questions... O'Large was not stopped. He wasn't searched. We don't know what happened. Was it $100 that passed through hands? $100 were passed between the undercover officer and Ms. McDonald. Did she come back with that $100? I don't believe there was any testimony as to whether or not the officer in the car saw the $100. Again, he just received the drugs that they had negotiated that he would be purchasing. She came back with that money. We pretty much know she handed the money to somebody else, but we can't answer the question whether she had the money. That's not a part of the record, no. There are no other questions. We ask that you affirm the court's decision below. Thank you. Mr. Fisher, Senator Bettle. Your Honor, Justice Wright's question with respect to the money. And if you said, well, maybe either she did it or maybe gave the money to somebody else, which is the other possibility. She's got the money in her pocket. And it contradicts the argument that she met a supplier if she had the money in her pocket. Well, the agent's giving her the money to get the drugs. I mean, that's the transaction, obviously. So the money's going to her. Now, if in fact she's sharing with the supplier, well, maybe she gives it to the supplier, maybe she doesn't. There's, again, in terms of the testimony of the surveillance officers who are the transaction at all. So they don't see her give him money. They don't see him give her drugs. They don't see him putting money in his pocket. They don't see her putting drugs in her pocket. They don't. The only thing they see is each one has a hand in the air. So what does that mean? It could mean a number of different things. And that is the problem with this case. Because if it means it could mean different things, that's not proof beyond a reasonable doubt. Well, you talked about, you know, we know when drug deals go bad. And, you know, so we know something from all the cases we see and some of us from other experiences. But is it routine that when somebody's passing drugs either to a buyer or from a supplier, that they hang it out here and say, look here, I got this for you? And the other person says, oh, that's nice. Something's got to pass, right? Something has to happen. And there's not enough to show what, if anything, happened. That's the problem. That's the problem. How big is this package of cocaine? Oh, let's see. I think it was two rocks. It was $100 worth. There may be more. It's probably a little bit more specific testimony about how much it actually weighed. Probably wasn't much. Probably wasn't super large. Could have been small. Could be pawned off to somebody, right? Could be. It's also small enough that she could have had it in her pocket right from the start, which is what the judge himself says. So the judge, again, the judge is not accepting the prosecution's theory of the case. Because, again, the judge specifically asked the prosecutor, in order to find Mr. O'Large guilty, do I have to find that he supplied the drugs to Ms. McDonald? The prosecutor says, yes, that's what you have to find. The judge does not make that finding. But he says, well, I think maybe he was there for security or one of these other things, which is also nothing more than speculation. Now, this case would be very different if the circumstance were that McDonald was an individual working off charges. Somebody who had been making buys of other individuals. And so in that type of situation, the officer routinely would, of course, search this individual before sending the individual off with the money so that they would know that that person didn't have drugs on their person to begin with. And then they're seen meeting with one person and only one person, and they come back and now they've got drugs. Well, sure, there's a solid inference there that the drugs must have come from that other person. They didn't materialize out of thin air, but that didn't happen here because McDonald is the target. With respect to the prior incident, about a month prior to this one, that was outside a motel and she told the same agent she had to meet her supplier. The individual drives up in a car. There are surveillance officers there, too, but they don't make any idea of the person in the car was not registered to Alan O'Large for what that was worth. The final thing, and I mentioned this previously, but this alley was not under surveillance the entire day. And so it's certainly altogether possible that she did meet with somebody else in the alley before encountering Mr. O'Large. That possibility is not foreclosed by the evidence because, again, the alley was not under surveillance during the time of the incident. The judge got it partially right in this case, I would submit, Your Honors. He got it partially right that the state did not prove beyond a reasonable doubt that there was a transaction between the two. I would submit, at that point, he should have found the defendant not guilty.   about other different ways in which the defendant might have participated. But that's speculation. And the case law has been clear forever that speculation is not good enough. The case law is also clear that guilt by association is not a favored doctrine in Illinois. So the fact they knew each other may have been reason for them to say hello, but is not a reason to find the defendant guilty. Some people call what you're calling speculation circumstantial evidence. I don't think even the circumstantial evidence, whatever evidence in this case, was not enough because the judge had to say, well, maybe this, maybe that, maybe the other thing. If you're saying maybe, maybe, maybe, well, maybe not. And if it's maybe not, that is not proof beyond a reasonable doubt. That is not sufficient in Illinois or the United States of America to sustain a conviction. When did that accountability theory originate? Was it argued in closing arguments? You know, I forget. It was definitely argued in closing arguments. And I forget whether it was set forth in the opening statement. But definitely in closing argument, the prosecutor makes clear that her theory of the case is that Mr. O'Large gave the drugs in the alley to McDonald that McDonald then argued he should be found guilty. Thank you. Thank you, Mr. Moore for your arguments here. Ms. Morton, thank you also. This matter will be taken under advisement. A written disposition will be issued.